# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| **DAVID O. COOPER** | : | **CASE NO.: 3:13-CV-00272** |
| **Plaintiff,** | : | **Judge Walter H. Rice** |
| vs. | : | |
| **MONTGOMERY COUNTY, OHIO SHERRIFF'S DEPARTMENT, et al** | : | |
| | : | |
| **Defendants.** | | |
| | : | |

## MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS MONTGOMERY COUNTY OHIO, MAJOR DARYL WILSON, AND CAPTAIN CHUCK CROSBY

Defendants Montgomery County, Major Daryl Wilson, and Captain Chuck Crosby ("Defendants") move this Court for Summary Judgment under Rule 56. There is no genuine issue of material facts, and judgement is warranted as a matter of law. Attached is a memorandum in support.

Respectfully submitted,

MATHIAS H. HECK, JR.
PROSECUTING ATTORNEY

By: s/ Anne M. Jagielski
Anne M. Jagielski, (0093047)
Todd M. Ahearn, (0069674)
Assistant Prosecuting Attorney
301 West Third Street
P.O. Box 972
Dayton, Ohio 45422
Telephone: (937) 496-7195
Fax Number: (937) 225-4822
E-mail: jagielskia@mcohio.org
Attorneys for Defendants Montgomery County, Major Daryl Wilson, and Captain Chuck Crosby

**MEMORANDUM IN SUPPORT**

I. INTRODUCTION

On August 15, 2013 Plaintiff David O. Cooper originally filed his complaint, *pro se*, naming Montgomery County Sheriff's Department ("MCSO"), Barb Doe of SBH Mental Health Services Agent, MCSO Captain, MCSO Major, MCSO's Second Shift Lieutenant, and MCSO Doe Deputies. (Doc. #1). In the original Complaint Plaintiff alleged 42 U.S.C. §1983 civil rights were violated. On July 15, 2014 Montgomery County Sheriff's Department, Montgomery County Captain Chuck Crosby and Major Daryl Wilson filed an Answer. (Doc. #35). On April 30, 2015 Attorney John J. Helbling filed his Notice of Appearance on behalf of Plaintiff. (Doc. #62). On May 19, 2014 Plaintiff filed his First Amended Complaint, *pro se*, alleging the same 42 U.S.C. §1983 cause of action. Through counsel, on August 11, 2015, Plaintiff filed an Amended Complaint against Montgomery County, John Doe, Anthony Whitaker, Chuck Crosby, Daryl Wilson, Curtis M. Laravie, Stacey Frisk, Thomas Connor, Steven Leopold, and Jay Vitali. (Doc. #74). On March 14, 2017 Defendants filed a Motion to Dismiss. (Doc. #84). United States Magistrate Judge Michael J. Newman issued Report and Recommendations, recommending the Court sustain in part and overrule in part the Motion to Dismiss of Defendants. (Doc. #93). United States District Judge Walter H. Rice adopted Judge Newman's Report and Recommendations and dismissed Laravie, Frisk, Connor, Vitali and Leopold. (Doc. #98). Therefore the only remaining Defendants are Montgomery County, Major Daryl Wilson, and Captain Chuck Crosby. (Doc. #93). In this Court's Decision and Entry, it also *sua sponte* dismissed John Doe of Summit Behavioral Health. (Doc. #93).

Plaintiff has alleged a broad civil rights violation under 42 U.S.C. §1983 alleging Defendants denied Plaintiff "rights, privileges, immunities secured to him by the Fourteenth

Amendment of the United States Constitution, including the right to be free from unreasonable seizures, and the right to be free from deprivations of liberty without due process of law." (Second Amend. Compl. ¶ 94).

In the Second Amended Complaint Plaintiff alleges causes of action of excessive force and assault and battery. These causes of action will not be addressed because they were only against Defendants Vitali, Frisk, Connor, Leopold, and Laravie and those Defendants have been dismissed. (Second Amend. Compl. ¶ 95). Along those same lines, Plaintiff's claim that Defendant Summit Doe was deliberately indifferent to Plaintiff's medical needs will also not be addressed as it does not involve any allegations against Montgomery County, Major Wilson or Captain Crosby and Summit Doe has been dismissed. Therefore the only remaining claim is the broad allegation of a 42 U.S.C. §1983 Civil Rights violation and a *Monell* claim for "fail[ing] to provide proper psychiatric medical care and endorsed improper customs at the Montgomery County Jail. [Montgomery County, Crosby, and Wilson] also ratified their subordinate's unconstitutional conduct by failing to discipline defendant-officers or conduct a proper investigation." (Second Amend. Compl. ¶ 93).

## II.     BACKGROUND FACTS

Plaintiff David Cooper is currently an inmate at the Toledo Correctional Institute. (Doc. #104, Depo of D.Cooper, PAGEID#7). Plaintiff has a history of mental illnesses. (Doc.#104 at PAGEID#11). Plaintiff was diagnosed with Borderline Personality Disorder when he was roughly 13 or 14 years old. (Doc.#104 PAGEID #11-12). Plaintiff also has a history of cutting himself since he was roughly 12 or 13 years old; Plaintiff cut himself "off and on for a long time." (Doc.#104 at PAGEID#12-13).

Plaintiff was housed in the Montgomery County Jail beginning February 29, 2012. (Doc.#104, PAGEID#13). When Plaintiff first arrived to the Montgomery County Jail he was seen by a mental health provider. (Doc.#104, PAGEID#14). When someone is booked into the jail, they are screened by the outside medical provider, Naphcare. If Naphcare or a booking officer has concerns about someone's mental health they are referred to mental health care provider.

After arriving to the Montgomery County Jail, Plaintiff was processed, booked, and then sent to one of the housing units. (Doc.#104, PAGEID#15). The housing unit had multiple bunkbeds and multiple men in the area. (Doc#104, PAGEID#15). In the housing unit Plaintiff had a mattress, pillow, blanket, and meals on trays. (Doc#104, PAGEID#15-16). Plaintiff had a physical altercation "with a guy in one of them pods" which resulted in the other man being placed in a different area in the jail away from Plaintiff. (Doc#104, PAGEID#21). Plaintiff also states that his medications were stopped for a period of time but Plaintiff cannot recall if he was the person hoarding medications or not. (Doc.#104, PAGEID#24-25). However, when Plaintiff is upset he tries to overdose and "might have been saving up trying to overdose. (Doc.#104, PAGEID#25).

While in the housing unit Plaintiff swallowed a door hinge and cut his arm open where he hit an artery. (Doc.#104, PAGEID#17-19). Plaintiff only complained to mental health personal at that point. (Doc.#104, PAGEID#17). Plaintiff was taken to the hospital, had surgery, and then brought back to the Montgomery County Jail. (Doc.#104, PAGEID#18-20). After arriving back to the Montgomery County Jail from the hospital Plaintiff was placed on the first floor in the receiving area. (Doc.#104, PAGEID#23). Plaintiff was placed in a cell whose door was all glass and there were constantly corrections officers in the general area. (Doc.#104, PAGEID#26-27).

During his time on the first floor Plaintiff tried multiple times to harm himself. (Doc.#104, PAGEID#25). Plaintiff tried to harm himself by pulling out his stitches and staples in his arm. (Doc.#104, PAGEID#28). Also, Plaintiff took the metal clip from his hospital band and shoved it inside his arm; he ended up having to go back to the hospital and have another surgery. (Doc.#104, PAGEID#28).

While at the Montgomery County Jail, during the time he was housed on the first floor, Plaintiff was sent to a mental health facility, Summit Behavioral Health, for observation and treatment. (Doc.#104, PAGEID#29). Summit Behavioral Health saw Plaintiff, evaluated him, and then sent him back to the Montgomery County Jail. (Doc.#104, PAGEID#29). Plaintiff was placed back in the cell on the first floor in the receiving area where he could be closely monitored. (Doc.#104, PAGEID#30). Plaintiff was again sent to Summit Behavioral Health "for a couple months,…it was at least a couple weeks or a month or so or longer." (Doc.#104, PAGEID#30). While during his second stay at Summit Behavioral Health, Plaintiff harmed himself again. (Doc.#104, PAGEID#32-33). Plaintiff cut himself and ate a battery. (Doc.#104, PAGEID#33). Plaintiff was again sent back to the Montgomery County Jail by Summit Behavioral Health. (Doc.#104, PAGEID#33).

While on the first floor, in the cell where he could be closely monitored, Plaintiff had restrictions. He was not given a mattress and was only given bag lunches. (Doc.#104, PAGEID#34-35). Plaintiff would threaten to harm himself if he was not given a mattress. (Doc.#104, PAGEID#35-36). Plaintiff also heard voices while at the Montgomery County Jail. (Doc.#104, PAGEID#54). The voices would give Plaintiff "a hard time." (Doc.#104, PAGEID#54). Plaintiff also harmed himself by straightening out paperclips, swallowing them, and sticking them in his abdomen. (Doc.#104, PAGEID#45). Plaintiff was mostly housed alone

but there were some occasions where it was necessary to place other inmates in his cell. (Doc.#104, PAGEID#46). While at the jail, Plaintiff talked to mental health personnel constantly. (Doc.#104, PAGEID#52-53). Plaintiff was eventually given finger food and no longer given bagged lunches. (Doc.#104, PAGEID#57). However, Plaintiff's biggest request was for a mattress. (Doc.#104, PAGEID#57). Plaintiff would use any means he had available to harm himself, including a mattress. (Depo of Wilson, Doc.#106, PAGEID#74). Plaintiff was not always without a mattress; Plaintiff at one point was given a mattress and damaged it so badly that it had to be removed. (Doc.#106, PAGEID#74-75). At the time Plaintiff was housed in the jail, the Montgomery County Jail did not have any tear proof mattresses but tried to find one. (Doc#106, PAGEID#75-76). Plaintiff, since leaving the Montgomery County Jail, has continued to harm himself with any means available to him. (Depo of D. Cooper, Doc.#104, PAGEID#59).

Staff of the Montgomery County Jail did a great deal to protect Plaintiff. Dr. Leland Johansen, a licensed psychiatrist in the state of Ohio, stated that "[David Cooper] has made various attempt[s] at hurting himself up to severe enough to have killed, were it not for the intervention of jail staff." (Depo of Crosby, Doc.105, PAGEID#33, Exhibit 2).

Captain Crosby was the administrative captain of the jail at the time of Plaintiff's time at the jail, while Major Wilson was the jail administrator. Captain Crosby spoke with Plaintiff almost daily. (Depo of D.Cooper, Doc.#104, PAGEID#57). Captain Crosby also had numerous conversations with Kathy Cooper, David Cooper's mother to discuss Plaintiff's condition. (Doc#104, PAGEID#37). Summit Behavioral Health, the mental health providers, and Naphcare drove the decision-making process for Plaintiff's care at the jail. (Depo of Crosby, Doc.105, PAGEID#49). The actions of the Defendants were with "collaboration between our mental health and the security staff was in response to inmate Cooper's actions and his statements—

threats constantly… [Plaintiff] made a lot of threats to harm himself, and he made a lot of threats to harm our staff." (Doc.#105, PAGEID#55-57).

It is well documented that the mental health provider recommended Plaintiff be without a mat, blanket, and only have finger foods. Summit Behavioral supervisor "does not recommend [a] mat for inmate at this time." (Doc.#105, PAGEID#46, Exhibit 5, Bates#400). Barb Flanigan from Summit Behavioral stated that Plaintiff must demonstrate he can be trusted with a mat before he is given one and that Plaintiff should remain on the first floor observation with no mat, no blanket, and a bag lunch for Plaintiff's safety. (Doc.#105, PAGEID#46, Exhibit 5, Bates#403). Ms. Flanigan made multiple entries in the Montgomery County Jail Tiburon system, indicating that she met with Plaintiff frequently. (Doc.#105, PAGEID#46, see Exhibit 5). During all those interactions Ms. Flanigan recommends that Plaintiff does not receive a mat because he could use it to harm himself. (Doc.#105, PAGEID#45, see Exhibit 5). Summit Behavioral supervisor states multiple times that Plaintiff should remain on the first floor, without a mat and blanket and with only bag lunches. (Doc.#105, PAGEID#45, see Exhibit 5).

Besides relying on mental health personnel, the Montgomery County Jail also contracts out with a dietitian, Aramark, to make sure inmates' dietary needs are properly met from the food they serve in the jail. (Depo of Wilson, Doc.#106, PAGEID#71-72). These dietitians determine the meals served in the Montgomery County Jail. Defendants worked hard to protect Plaintiff.

### III. LAW AND ARGUMENT

#### A. Standard for Summary Judgment

The Defendants incorporate herein by reference the standard set forth by this Court in *Johnson v. ITS Fin. LLC*, 314 F.R.D. 441, 444 (S.D. Ohio 2016).

### B. The officers are entitled to qualified immunity for the broad civil rights violations claims.

Qualified immunity is intended to give "government officials breathing room to make reasonable but mistaken judgments and protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Messerschmidt v. Millender*, 132 S.Ct. 1235, 1244, 182 L.Ed. 2d 47 (2012)(quoting *Ascroft v. al-Kidd*, 131 S.Ct. 2074, 2085, 179 Led.2d 1149 (2011). Qualified immunity applies regardless of whether the government officials' error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact. *Phillips v. Roane Cnty*, 534 F.3d 531, 538 (6th Cir. 2008). Qualified immunity is important to a society as a whole because it is an immunity of suit rather than a mere defense to liability. *White v. Pauly*, --S.Ct.== 2017-WL-69179, United States Supreme Court Jan. 9, 2017.

Qualified immunity attaches when an official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L. Ed.2d. 565 (2009). The Court has mandated a two-step process for qualified immunity. *Id*. First, plaintiff must show facts sufficient to make a violation of a constitutional right. *Id*. Secondly, the right at issue must have been "clearly" established at the time of the injury. *Id*. If either question, answered in any order, is answered in the negative then defendant is entitled to qualified immunity. *Id*. at 236; *Martin v. City of Broadview Heights*, 712 F.3d. 951, 957 (6th Cir. 2013).

### 1. Plaintiff can show no constitutional violation.

Plaintiff only identifies that Captain Crosby and Major Wilson violated the Fourteenth Amendment and broadly states the violation was a deprivation of liberty; it is unknown what liberties Plaintiff is referring. The Fourteenth Amendment affords pretrial detainees a due

process that is analogous to the Eighth Amendment. *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d. 605 (1983); *Watkins v. City of Battle Creek*, 273 F.3d 682, 685-86 (6th Cir. 2001). Not every claim by a prisoner that he did not receive medical treatment is a violation of the Eight Amendment. *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002). Deliberate indifference describes a state of mind that is more blameworthy than negligence. *Farmer v. Breen*, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d. 811 (1994). It requires "more than ordinary lack of due care for the prisoner's interests or safety." *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d. 251 (1986). In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to show that there was deliberate indifference to a serious medical need, as it is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. *Terrance*, 286 F.3d at 843. If a prisoner "has shown a strong likelihood that he would attempt to take his own life, a prison official's failure to take adequate precautions amounts to deliberate indifference." *Barber v. City of Salem, Ohio*, 953 F.2d 232, 239-40 (6th Cir. 1992). "When a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).

Here, the record shows that Defendants took adequate precautions and did not act with deliberate indifference. After Plaintiff harmed himself in the general population area, Plaintiff was placed in a cell on the first floor receiving area where he could be closely monitored. (Depo of D.Cooper, Doc.#104, PAGEID#26-27). The cell door was completely glass and there were constantly corrections officers in the general area of his cell. (Doc.#104, PAGEID#26-27).

Captain Crosby and Major Wilson met with NaphCare and Summit Behavioral Health multiple times regarding Plaintiff's care. (Depo of Crosby, Doc.#105, PAGEID#49) Plaintiff's mattress was taken away so he would not continue to harm himself. (Doc.#105, PAGEID#55-57). Plaintiff was given a bag lunch so he would not use the utensils to harm himself; Plaintiff's lunch still provided proper dietary needs, through Aramark. (Doc.#105, PAGEID#71-72). Captain Crosby and Major Wilson followed the directions and recommendations of the health care providers to ensure Plaintiff's safety. (Depo of Major Wilson, Doc.#106, PAGEID#55-57). Captain Crosby and Major Wilson followed the requests from Summit Behavioral Health to not give Plaintiff a mattress, blanket, and only provide finger food to keep Plaintiff from harming himself. (Doc.#106, PAGEID#46, See Exhibit 5). Every action by Captain Crosby and Major Wilson were done to protect Plaintiff. Captain Crosby and Major Wilson kept in close contact with Plaintiff, Plaintiff's mother, and the medical providers. Captain Crosby and Major Wilson were not deliberately indifferent to Plaintiff's needs.

### 2. Plaintiff can show no clearly established law as to the deprivation of liberty claim.

For a right to be clearly established, the outlines of the right must be sufficiently clear that a reasonable official would understand he is violating that right. *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003). The Supreme Court has warned that a "clearly established law" should not be defined "at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742, 131 S.Ct. 2074, 179, L.E2d 1149 (2011). The "clearly established law" must be particularized to the facts of the case. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Otherwise, "[p]laintiffs would be able to convert the rule of qualified immunity…into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id*. at 639.

Plaintiff here has made a blanket statement saying his Fourteenth Amendment liberties were violated. He makes no particularized allegations.

Since Plaintiff cannot overcome either prong of the qualified immunity analysis for a Fourteenth Amendment violation of liberties claim, summary judgment as to the individuals Captain Crosby and Major Wilson should be sustained.

### C. Montgomery County is subject to summary judgment on the *Monell* Claims.

There is no liability under *Monell* unless Plaintiff can first establish there was a constitutional violation. See, e.g., *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014); *Scott v. Clay Cnty.*, Tenn., 205 F.3d 867, 879 (6th Cir. 2000). Therefore, in the event the Court sustains Defendants' Motion for Summary Judgment on the above claims, then the *Monell* claims should be dismissed as well.

Summary judgment is appropriate because to succeed in a failure to train and supervise claim, Plaintiff must show that the (1) training or supervision was inadequate for the tasks the officers were performing; (2) inadequate training resulted from the defendant's deliberate indifference; and (3) inadequacy was closely related to, or directly caused the injury. *Ellis v. Cleveland Municipal School Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed. 2d 412 (1989). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.Ed. 2d 626 (1997).

To establish deliberate indifference, a plaintiff must demonstrate either that a municipality or local government (1) failed to provide adequate training in light of foreseeable consequences that could result from the lack of instruction; or (2) failed to act in response to repeated complaints of constitutional violations by its officers. *Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1999). A plaintiff cannot merely allege that an officer's training and supervision were inadequate, or that the officer would not have violated the plaintiff's constitutional rights had he or she been given more or better training and supervision. *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 904 (6th Cir. 1998). If the constitutional violation was not alleged to be part of a pattern of past misconduct, a supervisory official or a municipality may be held liable only where there is essentially a complete failure to train the police force, or training that is so reckless or grossly negligent that future police misconduct is almost inevitable or would properly be characterized as substantially certain to result. *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir. 1982) (internal citations omitted).

Here, the evidence fails to support a failure to train or supervise claim against Montgomery County.

With regard to police, practice, or custom this type of *Monell* claim as follows:

For Plaintiff to present a viable *Monell* claim, he must identify a specific policy or custom that was the "moving force" behind Plaintiff's alleged constitutional violation. To constitute a "moving force," the policy or custom must be closely related to the plaintiff's ultimate injury. "[P]roof merely that such a policy or custom was 'likely' to cause a particular violation is not sufficient; there must be proven at least an 'affirmative link' between policy or custom and violation; in tort principle terms, the causal connection must be 'proximate,' not merely 'but-for' the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Glowka v. Bemis*, 2015 U.S. Dist. LEXIS 166997, at *18-19 (citations omitted).

Plaintiff has identified no specific policy, practice, or custom that is the moving force behind the alleged constitutional violations. The record is devoid of any other policies, practices, or customs

that could have been the moving force behind the alleged constitutional violation.  Therefore Defendants' Motion for Summary Judgment on the Monell claim should be sustained.

### IV.     CONCLUSION

For the foregoing reasons, the Defendants Montgomery County, Captain Crosby, respectfully request the Court SUSTAIN this motion, and ORDER that all of Plaintiff's claims be dismissed, with costs assessed to Plaintiff.

Respectfully submitted,

MATHIAS H. HECK, JR.
PROSECUTING ATTORNEY

By: s/ Anne M. Jagielski
Anne M. Jagielski, (0093047)
Assistant Prosecuting Attorney
301 West Third Street
P.O. Box 972
Dayton, Ohio 45422
Telephone: (937) 496-7195
Fax Number: (937) 225-4822
E-mail: jagielskia@mcohio.org
Attorney for Defendants Curtis Laravie, Stacey Frisk, Thomas Connor, Jay Vitali, Montgomery County, Captain Chuck Crosby, and Major Daryl Wilson

### CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2017, the foregoing document was served on all parties or their counsel of record through the court's CM/ECF system, if they are registered users (pursuant to Fed. R. Civ. P 5(b)(2)(E)) or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record (pursuant to Fed. R. Civ. P 5(d)).

John J. Helbling, Atty.
6539 Harrison Ave., Box 124
Cincinnati, Ohio 45247

By: s/ Anne M. Jagielski
Anne M. Jagielski, (0093047)
Assistant Prosecuting Attorney